UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| WEARABLE SHOE TREE LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, BUSINESS ENTITIES, & UNINCORPORATED ASSOCIATION IDENTIFIED ON EXHIBIT 1,<br><br>    Defendants. | Civil Action No. 4:24-cv-334-SDJ |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Pursuant to Federal Rule of Civil Procedure 55(b)(2) and the Clerk's entry of default (Dkt. 57), Wearable Shoe Tree LLC ("Plaintiff") moves for an order of default judgment against each of the Defendants listed in the attached Exhibit 1 (the "Defaulting Defendants"). In support of this request, Plaintiff relies on the record in this case and the attached, incorporated exhibits. Plaintiff respectfully requests that the Court, for the reasons below, enter the accompanying proposed Default Judgment and Order for Permanent Injunction.

**CASES**

*Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321 (5th Cir. 2008)........................................10

*Amstar Corp. v. Domino Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980)..................................................10

*Berg v. Symons* 393 F. Supp. 2d 525 (S.D. Tex. 2005)....................................................................14

*Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571 (E.D. Tex. 2018)................................12, 14

*Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233 (5th Cir. 1988))..............................................14

*Chanel Inc. v. Christian Salvatore Ny Corp.*, 2023 U.S. Dist. LEXIS 212391 (N.D. Tex. 2023)....11

*Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338 (5th Cir. 2014)....................................................8

*Fiber Sys. Int'l v. Applied Optical Sys.*, 2008 U.S. Dist. LEXIS 121345 (E.D. Tex. 2008).............12

*GS Holistic LLC v. Chaganis Props. LLC*, 2024 U.S. Dist. LEXIS 106885 (N.D. Tex. 2024)........18

*GS Holistic, LLC v. Kenny Gee's LLC*, 2024 U.S. Dist. LEXIS 18851 (N.D. Tex. 2024)...............18

*Iancu v. Brunetti*, 588 U.S. 388, 389 (2019)......................................................................................14

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)..................................................................7

*James v. Frame*, 6 F.3d 307 (5th Cir. 1993).......................................................................................13

*Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*,
    2023 U.S. Dist. LEXIS 10325 (N.D. Tex. 2023).................................................................18

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (E.D. Pa. 2002).....................15

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995)............................................12

*Mouse On Tha Track LLC v. Parg Mgmt. LLC*, 2019 WL 6970946 (N.D. Tex. 2019)....................13

*Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975)...................................8

*Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290 (5th Cir. 2015).............9

*Philip Morris USA Inc. v. Banh et al.*, 2005 WL 5758392 (C.D. Cal. 2005)..................16

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)....................16

*Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685 (W.D. Tex. 2008)..............................14

*Phillip Morris USA Inc. v. Marlboro Express*, 2005 WL 2076921 (S.D.N.Y. 2005).......................16

*Real Estate Edge, LLC v. Campbell*, 2019 WL 830966 (W.D. Tex. 2019)......................17

*Rolex Watch U.S.A., Inc. v. Munn*, 2019 U.S. Dist. LEXIS 224209 (E.D. Tex. 2019)....................14

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996)......................................11

*Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274 (5th Cir. 1989)....................8

*Tapestry, Inc. v. Trendy Texas, LLC*, 2018 WL 1558274 (S.D. Tex. 2018)....................................14

*Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684 (5th Cir. 1992)........................17

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)...............................................11

*Viahart, LLC v. Doe*, 2021 U.S. Dist. LEXIS 37579 (E.D. Tex. 2021)............................................15

*Walden v. Fiore*, 571 U.S. 277 (2014).......................................................................7

*Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490 (5th Cir. 2015)....................................8

**S<small>TATUTES</small>**

15 U.S.C. § 1114................................................................................................5, 11

15 U.S.C. § 1116................................................................................................18

15 U.S.C. § 1117................................................................................9, 13, 16, 17

15 U.S.C. §1125(a)................................................................................5, 11, 12, 17

28 U.S.C. § 1331................................................................................................7

28 U.S.C. § 1338 ................................................................................................7

28 U.S.C. § 1391................................................................................................8

35 U.S.C. § 271............................................................................................................5, 13

35 U.S.C. § 282...............................................................................................................12

35 U.S.C. § 285...........................................................................................................9, 17

Fed. R. Civ. P. 4(k)(2). ..................................................................................................7, 8

Fed. R. Civ. P. 8(b)(6)................................................................................................11, 12

Fed. R. Civ. P. 12...............................................................................................................8

Fed. R. Civ. P. 55.............................................................................................................13

## STATEMENT OF ISSUES

The only issue before this Court is whether Plaintiff's well-pleaded allegations of fact in its Complaint (Dkt. 1) entitle Plaintiff to default judgment against the Defaulting Defendants as to Plaintiff's allegations of counterfeiting under 15 U.S.C. § 1114, unfair competition and false designation of origin under 15 U.S.C. §1125(a), and patent infringement under 35 U.S.C. § 271.

## PROCEDURAL BACKGROUND

Plaintiff brought this action on April 19, 2024 (Dkt. 1) against the 601 Defendants listed in Exhibit 1 to the Complaint ("Defendants"), seeking relief against Defendants for counterfeiting under 15 U.S.C. § 1114, unfair competition and false designation of origin under 15 U.S.C. §1125(a), and patent infringement under 35 U.S.C. § 271, through their promotion, advertising, marketing, distribution, offering for sale, and sale of products that infringe on Plaintiff's patented shoe inserts ("Infringing Products") via online stores (the "Infringing Webstores") on various e-commerce platforms, such as Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, Walmart, and Wish (the "Marketplaces"). Plaintiff sought discovery from the Marketplaces immediately upon issuance of the TRO (Dkt. 17, the "TRO") in an attempt to properly identify each of the Defendants, and Plaintiff thereafter incorporated the information provided by the Marketplaces into its requested summonses—all of these summonses were issued by the Clerk for service on Defendants. Dkt. 48. The Court then issued a preliminary injunction on July 3, 2024 (Dkt. 45, the "PI")—extending the relief ordered in the TRO.

Plaintiff filed its Motion for Alternative Service of Process on April 23, 2024. Dkt. 9. Exercising its authority under Federal Rule of Civil Procedure 4(f)(3), the Court granted Plaintiff's Motion for Alternative Service of Process on May 7, 2024. Dkt. 17. Plaintiff thereafter served each

of the Defaulting Defendants on July 9, 2024 via email pursuant to the Court's order. Dkt. 17. None of the Defaulting Defendants filed a responsive pleading, so Plaintiff filed its Request for Clerk's Entry of Default on August 1, 2024. Dkt. 56. The Clerk thereafter entered default against the Defaulting Defendants on August 6, 2024. Dkt. 57.

STATEMENT OF FACTS

Plaintiff is engaged in the business of selling innovative shoe care and preservation products throughout the world (Plaintiff's "Products"). Plaintiff is the owner of all right, title and interest in and to U.S. Registration No. 4686931 for the SNEAKER SHIELDS composite mark, U.S. Registration No. 6220820 for the SHIELDS standard character mark, and U.S. Registration No. 7458351 for the SNEAKER SHIELDS standard character mark (the "Marks"); and Plaintiff is the owner of all right, title and interest in and to U.S. Patent No. D970,203 S titled "Wearable Shoe Tree" (the "Patent," together with the Marks, the "Registrations"). Plaintiff has expended considerable resources advertising, marketing, and promoting Plaintiff's Products subject to the Registrations, and these efforts have resulted in substantial sales of Plaintiff's Products, as well as accumulation of invaluable consumer goodwill. Dkt. 7-2. Plaintiff discovered that Defendants were selling the Infringing Products on the Infringing Webstores, and Plaintiff confirmed that Defendants were offering the Products for sale to U.S. and Texas residents. *Id*. Defendants and the Infringing Webstores do not conduct business with Plaintiff and do not have the right or authority to use, reproduce, or display the Infringing Products in any manner whatsoever. *Id*.

Defendants' infringing activities are depriving Plaintiff of the ability to control use and licensing of its Products, and are preventing Plaintiff from enjoying the exclusive rights to use and control its Registrations. Such loss of control over the Products and Registrations is neither calculable nor precisely compensable. Given the online nature of Defendants' commercial

activities, Defendants have substantially benefitted from their unlawful tactics and infringement of the Registrations to profit from the sale of the Infringing Products. The willfully infringing and deceptive tactics used by the Defaulting Defendants to conceal their identities and the full scope of their infringing operations make it virtually impossible for Plaintiff to learn the true extent of the Defaulting Defendants' actions. Plaintiff therefore seeks to enforce its rights and recover from the Defaulting Defendants.

**ARGUMENT**

**I.      Jurisdiction and Venue Are Proper in This Court**

This Court has subject-matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is an action arising under the laws of the United States and relating to patents and trademarks.

This Court has personal jurisdiction over Defendants because each Defendant has, through one or more fully interactive commercial Internet websites, pursued sales from Texas residents by offering shipping to Texas (Dkt. 7-2), and, on information and belief, has induced sales of Infringing Products to residents of Texas by wrongfully reproducing and displaying the subjects of the Registrations. As such, personal jurisdiction is proper because each of the Defendants transacts business to the State of Texas, is committing infringing acts in Texas, and has wrongfully caused Plaintiff substantial injury in the State of Texas.

This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise under federal law; the Defendants are, on information and belief, not subject to jurisdiction in any state's courts of general jurisdiction; and exercise of such jurisdiction is consistent with the United States Constitution and laws. Fed. R. Civ. P. 4(k)(2).[1] Personal jurisdiction is thus also proper

---

[1] "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also J. McIntyre Mach.,*

pursuant to Rule 4(k)(2) because each of the Defendants directs its activities at residents of the United States and the State of Texas.

Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are entities or individuals subject to personal jurisdiction in this District, and Defendants not residing in the United States may be sued in any judicial district.

## II. Plaintiff Has Met the Requirements for Default Judgment

Federal Rule of Civil Procedure 55 governs the procedural requirements related to the entry of default judgment. Although default judgments are generally disfavored, the policy against default judgments is "counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." *Wooten v. McDonald Transit Associates, Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). A default judgment is appropriate "when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting on appeal the facts thus established." *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations, assumed to be true. *Wooten*, 788 F.3d at 496.

Plaintiff served each of the Defaulting Defendants on July 9, 2024 via email pursuant to the Court's order. Dkt. 17. More than 21 days have passed since the Defaulting Defendants were served, and no answer has been filed. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default

---

*Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) ("submission through contact with and activity directed at a sovereign may justify specific jurisdiction"). Specific jurisdiction only requires a defendant to have "minimum contacts" with the state, rather than the more rigorous "continuous and systematic" standard for general jurisdiction—the defendant need only purposefully direct its activities at residents of the forum, and the plaintiff's alleged injury must arise out of or relate to the defendant's contacts with the forum state. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014).

8

judgment is appropriate. Plaintiff therefore respectfully requests an award of statutory damages against each Defaulting Defendant in the amount of $200,000 pursuant to 15 U.S.C. § 1117. Plaintiff respectfully asserts that this amount is fair and equitable given the Defaulting Defendants' willful infringement of the various Registrations.

Plaintiff also respectfully requests an award of its reasonable attorney's fees jointly and severally against the Defaulting Defendants pursuant to 15 U.S.C. § 1117, and finding that this is an exceptional case and awarding Plaintiff its costs, expenses, disbursements, and reasonable attorneys' fees related to Defaulting Defendants' patent infringement under 35 U.S.C. § 285. Plaintiff further seeks entry of a permanent injunction pursuant to 15 U.S.C. § 1117 prohibiting the Defaulting Defendants from continuing to use the Infringing Products, and an Order that all assets in the Defaulting Defendants' Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, Walmart, Wish, Alipay, PayPal, Payoneer, Stripe, WorldFirst, Western Union, MoneyGram, or other bank accounts, as well as any newly discovered assets, be transferred to Plaintiff.

### A. Counterfeiting

A prima facie trademark infringement and counterfeiting case "is made out by proof of two elements: that the plaintiff owns a legally protected mark, and there is a likelihood of confusion between her mark and the defendant's mark." *Pennzoil-Quaker State Co. v. Miller Oil & Gas Operations*, 779 F.3d 290, 294 (5th Cir. 2015). Plaintiff satisfies all these requirements and should therefore succeed on the merits of its counterfeiting claim against the Defaulting Defendants.

Plaintiff has already established that it owns the legally-protected Marks. *See* Dkt. 7-2 ¶ 4. Plaintiff has therefore established the first element of its counterfeiting claim. The likelihood of confusion factors examined by the Fifth Circuit are: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers;

(5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers. The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Am. Rice, Inc. v. Producers Rice Mill, Inc*., 518 F.3d 321, 329 (5th Cir. 2008).

The first factor weighs in Plaintiff's favor, for Plaintiff's Marks are inherently distinctive and registered with the United States Patent and Trademark Office ("USPTO") on the Principal Register. The Marks have been used exclusively and continuously by Plaintiff since at least as early as 2010. Dkt. 7-2. The second factor also weighs in Plaintiff's favor because the marks being used by the Defaulting Defendants are identical to Plaintiff's Marks, as the Defaulting Defendants are seeking to trade on the goodwill of Plaintiff's Marks. Furthermore, Plaintiff has never licensed or given Defaulting Defendants the right to use any of the marks. *Id*. at ¶ 9. The third factor also weighs in Plaintiff's favor because Defaulting Defendants are using the Marks while selling exact counterfeit copies of Plaintiff's genuine branded Products. When considering the fourth factor, courts consider "the similarity of the parties' retail outlets and customers." *Amstar Corp. v. Domino Pizza, Inc*., 615 F.2d 252, 262 (5th Cir. 1980) Here, both Plaintiff and Defaulting Defendants advertise and sell their products to consumers via the Internet and online ecommerce webstores. Both parties use the same means and channels of commerce to target the same consumers looking for genuine Plaintiff Products. The fourth and fifth factors therefore also weigh in favor of Plaintiff. Regarding the sixth factor, if a mark was adopted with the intent to confuse the public, that alone is often sufficient to justify an inference of a likelihood of confusion. *Amstar Corp.*, 615 F.2d at 262. This factor weighs in Plaintiff's favor, as the Defaulting Defendants are intentionally using the Marks to confuse and deceive the consuming public into thinking that the Infringing Products are manufactured by, or originate from, Plaintiff in an attempt to benefit and trade off of Plaintiff's goodwill and reputation. Actual confusion can be inferred in this case because Defaulting Defendants are selling identical counterfeit versions of Plaintiff's Products using Plaintiff's Marks. Because the goods as advertised look identical, consumers

are likely to have already been confused to believe that Defaulting Defendants' products are genuine Plaintiff Products, or are sponsored or endorsed by Plaintiff. The seventh factor therefore weighs in Plaintiff's favor. Finally, the consumers of Plaintiff's genuine Products and the Infringing Products are all average consumers who are not exercising any notable care when making purchasing decisions. The eighth and final factor therefore also weighs in Plaintiff's favor. In sum, each and every likelihood of confusion factor favors Plaintiff, and Plaintiff therefore succeeds on the merits of its counterfeiting claim. Because the Defaulting Defendants have failed to respond in this matter, the Court must accept the allegations contained in the Complaint as true. Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff requests that this Court enter judgment against each of the Defaulting Defendants with respect to Plaintiff's well-pleaded allegations of counterfeiting in violation of 15 U.S.C. § 1114.

### B. Unfair Competition & False Designation of Origin

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show "(1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travelled in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1381 (5th Cir. 1996). The test used in determining whether a violation has occurred under Section 43(a) of the Lanham Act is "whether the public is likely to be deceived or confused by the similarity of the marks." *Chanel Inc. v. Christian Salvatore Ny Corp.*, 2023 U.S. Dist. LEXIS 212391, at *22-23 (N.D. Tex. 2023) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992). This is the same test that is used for determining whether infringement has occurred under the Lanham Act. *See Id*. citing *Better Keiki, LLC v. MairicoDirect*, 2018 WL 5305571, at *4 (E.D. Tex. 2018).

Plaintiff has established that it should succeed on the merits of its counterfeiting claim against Defaulting Defendants above, therefore, Plaintiff has also established a likelihood of success on the merits of its unfair competition and false designation of origin claim. Because the Defaulting Defendants have failed to respond in this matter, the Court must accept the allegations contained in the Complaint as true. Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff requests that this Court enter judgment against each of the Defaulting Defendants with respect to Plaintiff's well-pleaded allegations of unfair competition and false designation of origin in violation of 15 U.S.C. §1125(a).

C. **Patent Infringement**

"In a patent infringement suit, to demonstrate a likelihood of success on the merits, the plaintiff must show that it will likely prove infringement of one or more claims and that at least one of those same allegedly infringed claims will also likely withstand an invalidity challenge." *Fiber Sys. Int'l v. Applied Optical Sys.*, 2008 U.S. Dist. LEXIS 121345, at *7-8 (E.D. Tex. 2008). A patent granted by the USPTO is presumed valid, 35 U.S.C. § 282, and patent infringement is determined by comparing the patent claims to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Plaintiff's Patent is valid, subsisting, unrevoked, and uncancelled, and has been protected by the USPTO since November 22, 2022. Dkt. 3, Ex. 3.

Plaintiff's Patent claims the design for a wearable shoe tree as shown and described through seven figures corresponding and ordering in perspective, right side, left side, front, back, top, and bottom views. Defaulting Defendants' Infringing Products are identical or nearly identical, counterfeit versions of Plaintiff's Patent in all material respects, and each claim covered by Plaintiff's Patent is being infringed upon. Plaintiff therefore succeeds on its patent infringement claim against the Defaulting Defendants. Because the Defaulting Defendants have failed to respond in this matter, the Court must accept the allegations contained in the Complaint as true. Fed. R. Civ. P. 8(b)(6). Accordingly, Plaintiff requests that this Court enter judgment against each of the Defaulting

Defendants with respect to Plaintiff's well-pleaded allegations of patent infringement in violation of 35 U.S.C. § 271.

## III. PLAINTIFF IS ENTITLED TO MONETARY AND INJUNCTIVE RELIEF

### A. Plaintiff Elects to Recover Statutory Damages

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117:

> [i]n a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover . . . an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). The Fifth Circuit has recognized that district courts have wide latitude in deciding whether to require an evidentiary hearing before entering default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). Where "the amount claimed is a liquidated sum or one capable of mathematical calculation[,]" an evidentiary hearing is not required. *James*, 6 F.3d at 310. "[S]tatutory damages are intended not merely for the restitution of profits or reparation of injury, but to deter wrongful conduct." *Mouse On Tha Track LLC v. Parg Mgmt. LLC*, No. 3:18-CV-2980-S-BH, 2019 WL 6970946, at *7 (N.D. Tex. Nov. 13, 2019). Plaintiff therefore seeks recovery of statutory damages pursuant to 15 U.S.C. § 1117(c) against each Defaulting Defendant in the amount of $200,000 for the Registrations infringed, and as the Defaulting Defendants have not appeared in this action and the amount claimed is a liquidated sum, Plaintiff respectfully requests that the Court award this relief of $200,000 against

each Defaulting, instead of the statutory maximum of $2,000,000, without holding a hearing. Plaintiff asserts is fair and reasonable given the circumstances—especially in light of the Defaulting Defendants' failure to appear or defend against this lawsuit.

### B. Defaulting Defendants Acted Willfully

Courts in the Fifth Circuit "have found willful conduct where a defendant acts with 'reckless disregard for, or [with] willful blindness' toward a trademark owner's rights." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 685, 693 (W.D. Tex. 2008) (quoting *Berg v. Symons* 393 F. Supp. 2d 525, 539–40 (S.D. Tex. 2005)). Such willful blindness can be established when the defendant "knows his actions constitute an infringement; the actions need not have been malicious." *Better Keiki*, 2018 WL 5305571, at *6 (citing *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988)). Further, a defendant's failure to defend itself allows the Court to infer willfulness. *Rolex Watch U.S.A., Inc. v. Munn*, 2019 U.S. Dist. LEXIS 224209, at *4 (E.D. Tex. 2019) (citing *Tapestry, Inc. v. Trendy Texas, LLC*, 2018 WL 1558274, at *1 (S.D. Tex. 2018)).

While the Defaulting Defendants' default allows the Court to infer their willfulness, Plaintiff has also independently demonstrated that the Defaulting Defendants willfully infringed its Registrations. Plaintiff's ownership of its Registrations put the Defaulting Defendants on notice that similar products were not legally available to reproduce and sell without permission from Plaintiff. *See Iancu v. Brunetti*, 588 U.S. 388, 389 (2019) (citation omitted) ("[R]egistration serves as 'constructive notice of the registrant's claim of ownership[.]'"). Plaintiff's Registrations are specifically associated with its Products and have been for many years. Dkt. 7-2. None of the Defaulting Defendants have business relations with Plaintiff, and Plaintiff has not given any Defaulting Defendant authorization to use its Registrations. *Id*. Nevertheless, the Defaulting Defendants used Plaintiff's Registrations on and in connection with the Infringing Products. Such

action demonstrates that the Defaulting Defendants were either aware of or willfully blind to the fact that they were infringing Plaintiff's trademark and patent rights. The Defaulting Defendants' infringements were therefore committed willfully.

### C. A High Statutory Damages Award Is Appropriate and Just

Among the numerous factors considered by the courts in setting statutory damage amounts are "(1) expenses saved and profits reaped; (2) revenues lost by plaintiff; (3) the value of the [intellectual property infringed]; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendants." *Viahart, LLC v. Doe*, 2021 U.S. Dist. LEXIS 37579, at *13 (E.D. Tex. 2021).

Very little discovery occurred with regard to the Defaulting Defendants' overall sales to-date and the Defaulting Defendants' profit margins directly related to the sale of the Infringing Products, as none of the Defaulting Defendants have provided this information, and the Marketplaces have not been able to provide Plaintiff with all of the information requested throughout this case. The first two factors therefore cannot be assessed with accuracy. *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (E.D. Pa. 2002) (finding that "the first two factors cannot be assessed" because "no discovery ever occurred"). Third, Plaintiff's Registrations are highly valuable. Plaintiff sells its Products via its website, on eBay, Amazon, Walmart, and Hibbett Sports, and in over 100 shops around the world. Dkt. 7-2. Further, the Defaulting Defendants' investment in the manufacturing and sale of counterfeit versions of Plaintiff's Products is compelling evidence for the high value of Plaintiff's Registrations. Without the valuable goodwill Plaintiff has created, the Defaulting Defendants' investment in

counterfeiting would not be worthwhile. For the fifth and sixth factors, it is clear that Defaulting Defendants' conduct was willful, as they have failed to appear, cooperate, or defend themselves in any way. For the fourth and seventh factors, Plaintiff has presented evidence that issuing a default judgment and permanent injunction on the Defaulting Defendants is undoubtedly the best, and indeed truly the only way to deter future infringing conduct. Consequently, high statutory damages are likely to effectively discourage the Defaulting Defendants and others from violating federal trademark and patent law. A high award is appropriate because the Defaulting Defendants' conduct attracted wide market exposure due to their internet sales, and this award would deter the Defaulting Defendants' and others' improper use of the Registrations, punish the Defaulting Defendants for their conduct, and adequately compensate the Plaintiff.

In similar cases involving willful counterfeiting, courts have awarded the plaintiff maximum statutory damages pursuant to 15 U.S.C. § 1117(c)(2) to punish the defendants for their counterfeiting activities, to deter the defendants and others from bringing counterfeit goods into commerce, and to adequately compensate the plaintiff. *Phillip Morris USA Inc. v. Marlboro Express*, 2005 WL 2076921, at *6 (S.D.N.Y. 2005); *Philip Morris USA Inc. v. Banh et al.*, 2005 WL 5758392, at *7 (C.D. Cal. 2005); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501–02 (C.D. Cal. 2003). Awarding high statutory damages in this case will deter further infringers and punish the Defaulting Defendants for failing to participate in this litigation. Defaulting Defendants have not appeared, nor have they provided any records to help in assessing potential damages. In sum, because Defendants' conduct was willful, and Defendants have still failed to appear or cooperate in resolving this matter, an award of statutory damages against each Defaulting Defendant in the amount of $200,000 for infringing Plaintiff's Registrations is warranted. Given the Court's clear discretion in determining the appropriate amount of the

statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), Plaintiff respectfully requests the Court's entry of an award of $200,000 against each Defaulting Defendant.

### D. Plaintiff is Entitled to Recover its Costs and Attorneys' Fees

Plaintiff seeks recovery of its reasonable and necessary attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). A court may award attorney's fees for a 15 U.S.C. § 1125(a) violation in "exceptional cases." 15 U.S.C. § 1117(a). The Fifth Circuit has found "exceptional cases" when the defendant acts maliciously, fraudulently, deliberately, or willfully. *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). Courts in this circuit have also routinely characterized a defendant's improper conduct as deliberate, willful, knowing, and intentional simply by virtue of the defendant's default. *Real Estate Edge, LLC v. Campbell*, 2019 WL 830966, at *6 (W.D. Tex. 2019).

Plaintiff is entitled to recover its attorney's fees pursuant to 15 U.S.C. § 1117(a) because the instant case qualifies as an "exceptional case" under Fifth Circuit law. The Defaulting Defendants directly copied Plaintiff's Products without authorization to market, sell, and generate revenue from the sale of Infringing Products. Dkt. 7-2. Furthermore, the Defaulting Defendants failed to answer Plaintiff complaint or otherwise defend the lawsuit, thereby establishing that the Defaulting Defendants' improper conduct was committed deliberately, willfully, knowingly, and intentionally simply by virtue of their default. Plaintiff therefore seeks recovery of its full costs and attorney's fees from the Defaulting Defendants pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 285.

### E. Plaintiff is Entitled to Permanent Injunctive Relief

In addition to the foregoing relief, Plaintiff respectfully requests entry of a permanent injunction enjoining the Defaulting Defendants from continuing their infringing use of the

Infringing Products pursuant to 15 U.S.C. § 1116. "A party seeking a permanent injunction must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *GS Holistic LLC v. Chaganis Props. LLC*, 2024 U.S. Dist. LEXIS 106885, at *33 (N.D. Tex. 2024). All four factors weigh in favor of granting a permanent injunction against the Defaulting Defendants.

In a dispute over trademark infringement and unfair competition, "when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm. . . . The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill." *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, 2023 U.S. Dist. LEXIS 10325, at *16 (N.D. Tex. 2023). Plaintiff has therefore suffered irreparable injury, and thus satisfies the first element.

Second, because "the harm lies in damage to the trademark owner's reputation and inability to control the quality of services or products by the unauthorized user, the harm is difficult to pinpoint as compensable damages." *GS Holistic, LLC v. Kenny Gee's LLC*, 2024 U.S. Dist. LEXIS 18851, at *29 (N.D. Tex. 2024). Accordingly, Plaintiff has shown that damages alone are an inadequate remedy for Defaulting Defendants' actions, thereby satisfying the second element.

Third, when "balancing the harms to the plaintiff and defendant, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." *Id*. That is the case here: any harm Defaulting Defendants suffer from being forced to stop selling the Infringing Products is likely minimal when compared to the harm suffered by Plaintiff. Plaintiff is entitled to protect the integrity of its

intellectual property, and it continues to suffer hardship as long as the Defaulting Defendants are infringing its Registrations. Plaintiff has therefore satisfied the third element.

"Lastly, courts are inclined to grant injunctive relief as within the public's interest—in such disputes over trademark and unfair competition—because the Lanham Act is intended to protect the ability of consumers to distinguish among competing producers." Id. at *29-30. As Defendants have hampered consumers' ability to distinguish between legitimate and counterfeit Plaintiff Products, injunctive relief is in the public interest. Plaintiff therefore satisfies the fourth element.

Plaintiff therefore asks the Court to permanently enjoin the Defaulting Defendants from infringing Plaintiff's Registrations, using the Infringing Products, and to order any further relief the Court deems just to restrain the Defaulting Defendants from causing further irreparable damage to Plaintiff.

## Conclusion

Awarding statutory damages in this case deters the Defaulting Defendants and others from engaging in infringing conduct, compensates Plaintiff for such infringement, and admonishes the Defaulting Defendants for neglecting to participate in this litigation. This, in turn, promotes judicial efficiency and the just resolution of legal matters. An award of $200,000 for infringement of Plaintiff's various Registrations further protects both Plaintiff's valuable intellectual property rights and the integrity of federal trademark and patent law. Plaintiff thus respectfully requests that the Court enter an order granting Plaintiff all of its damages pled herein, issue a permanent injunction enjoining the Defaulting Defendants from using the Infringing Products, and order that all assets in the Defaulting Defendants' Alibaba, AliExpress, Amazon, Bonanza, CJDropshipping, DHgate, eBay, Etsy, Joom, Joybuy, Shein, Shopify, Temu, Walmart, Wish, or other bank or merchant accounts, as well as any newly discovered assets, be transferred to Plaintiff.

Dated: August 7, 2024                                    Respectfully submitted,

**SCALE LLP**

By: */s/ Charles A. Wallace*
Charles A. Wallace
Texas Bar No. 24110501
James H. Creedon
Texas Bar No. 24092299
5473 Blair Road, Suite 100
Dallas, Texas 75231
Tel.    415.735.5933
Fax    415.573.0983
cwallace@scalefirm.com
jcreedon@scalefirm.com

ATTORNEYS FOR PLAINTIFF
WEARABLE SHOE TREE LLC

## CERTIFICATE OF SERVICE

I certify that on August 7, 2024, I caused a true and correct copy of the foregoing document to be filed on the Court's CM/ECF system, which served notice on all counsel of record. The Defaulting Defendants were also provided notice on August 7, 2024, via email to all of the email addresses identified in the attached Exhibit 1.

By: */s/ Charles A. Wallace*
Charles A. Wallace

## CERTIFICATE OF CONFERENCE

None of the Defaulting Defendants have appeared in this case, and therefore, pursuant to Local Rule 7(G), undersigned counsel states that he is unable to meet and confer with Defaulting Defendants and unable to state whether this motion is opposed.

*/s/ Charles A. Wallace*
Charles A. Wallace